IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

VIRGINIA H.,[1]

          **Plaintiff,**

v.                                                                                                   Case No. 4:23-cv-28

MARTIN O'MALLEY,[2]
**Commissioner of Social Security,**

          **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Virginia H. seeks judicial review of the Commissioner of Social Security's denial of her claim for disability insurance benefits ("DIB") under the Social Security Act ("the Act"). Plaintiff argues that the Commissioner's Administrative Law Judge ("ALJ") relied on deficient vocational expert testimony when determining her Residual Functional Capacity ("RFC"), and consequently erred at step five of the sequential analysis under 20 C.F.R. § 404.1520 (a)(4). This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. This Report finds no error in the ALJ's step five analysis and concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, this Report recommends that the Court affirm the decision of the Commissioner.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.
[2] Since the filing of the case, Martin O'Malley was appointed the Commissioner of Social Security. He is therefore automatically substituted as a party pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

## I.     **Procedural Background**

Plaintiff protectively filed for DIB under Title II of the Act on January 19, 2021. (R. 20, 80). She alleged disability beginning on January 18, 2021, based on major depressive disorder, anxiety, fibromyalgia, mobility issues with her knee and ankle, headaches including migraines, arthritis, and stress intolerance. (R. 81). The state agency denied her application initially and on reconsideration. (R. 106, 120). Plaintiff then requested an administrative hearing. (R. 125). The virtual hearing was held on September 23, 2022. (R. 45–79). Counsel represented Plaintiff at the hearing, and an impartial vocational expert ("VE") testified. (R. 45). On October 4, 2022, the ALJ denied Plaintiff's claim for DIB, finding she was not disabled during the period alleged. (R. 17–38). The ALJ found that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 25). The ALJ also found that Plaintiff's RFC permitted her to work within the national economy. (R. 37). On January 5, 2023, the Appeals Council denied Plaintiff's request for review. (R. 2–5).

On February 23, 2023, Plaintiff filed her Complaint in this court. Compl. (ECF No. 1). She seeks judicial review of the Commissioner's final decision that she was not disabled, arguing "that the denial of her disability claim is not supported by substantial evidence ... and therefore the denial of her claim should be reversed or remanded for further administrative proceedings." Id. at ¶ 6. On May 19, 2023, Plaintiff moved for summary judgment. (ECF No. 6). Plaintiff argues that the final agency decision should be vacated and therefore remanded because (1) the ALJ improperly accepted the VE testimony that there exist a "significant number" of jobs she can perform in the national economy; and (2) it is unclear from the record whether the VE understood that the ALJ's non-production pace limitation applied to the light hypothetical RFC she eventually

imposed. Pl.'s Br. Supp. Summ. J. ("Pl.'s Br.") (ECF No. 7, at 5–10). On June 17, 2023, the Commissioner opposed Plaintiff's motion.[2] (ECF No. 8). The Commissioner argues that substantial evidence supports the ALJ's step five determination, and thus the ALJ properly concluded that Plaintiff was not disabled within the meaning of the Act. Id. at 8–11. After a review of the record, this Report considers each of these arguments.

## II.   Factual Background

Plaintiff was born on January 24, 1971, and at the time of the ALJ's decision, she was 51 years old. (R. 38, 80). She is a veteran of the U.S. Navy with a 100% VA Disability Rating. (R. 394–95). She has not engaged in substantial gainful activity since the alleged onset date—January 18, 2021. (R. 23, 81). She has a high school education and an Associates degree. (R. 36, 54). She reported past work as a material handler, corrections officer, and medical records clerk. (R. 36–37, 54). Plaintiff's arguments in this court do not require any review of her medical history as she does not contest the ALJ's RFC finding. Instead, she disputes only the ALJ's step 5 analysis in which she found jobs in the national economy Plaintiff could perform.

### A.   Testimony Before the ALJ

At the hearing on September 23, 2022, the ALJ heard testimony from Plaintiff and an impartial VE, Rich Bradley. (R. 45–79).

---

[2] In opposing Plaintiff's motion, the Commissioner did not move for summary judgment. However, under the new Supplemental Rules for Social Security Actions, effective December 1, 2022, appeals from final decisions of the Social Security Administration are presented for decision by the parties' briefs. Supp. R. Soc. Security Actions Under 42 U.S.C. § 405(g), Rule 5. As both parties have filed their briefs on this matter pursuant to the undersigned's Briefing Order, (ECF No. 5), this matter is ripe for review notwithstanding the absence of cross-motions for summary judgment. To the extent the Commissioner's brief, Def.'s Br. in Supp. of Decision & in Opp'n to Pl.'s Mot. Summ. J. (Def.'s Br.) (ECF No. 8), seeks summary judgment in the Commissioner's favor, this Report recommends that the court GRANT the motion.

1.  **Plaintiff's Testimony**

On direct questioning by the ALJ, Plaintiff testified that she is single and lives alone in an apartment. (R. 53–54). Plaintiff has a 28-year-old child. (R. 54). Plaintiff stated that she has a driver's license and drives to her appointments. Id. During her last ten years at the Navy, Plaintiff was a bosun's mate and completed "shipboard duties" including "cargo handling." (R. 54–55). Plaintiff's job involved "going to different locations, such as Kuwait to onload and offload ships in support of various wars or conflicts." (R. 55). Plaintiff stated that she physically loaded and unloaded ships, completed crane and forklift exercises, pad lining, and guided equipment that needed to be towed. Id. Plaintiff's job "varied," and at times she lifted "50 pounds, or more," with help. Id. Plaintiff left the Navy after 20 years of service. (R. 55–56).

Plaintiff then worked at the Virginia Department of Corrections and Hampton Roads Regional Jail. (R. 56). She had "very similar" duties at both facilities. Id. Plaintiff testified that she worked with inmates, stopped fights, searched inmate cells, transported inmates, carried weapons, and used defensive tactics. Id. Plaintiff left these jobs because she "started to experience many periods of not being able to really walk … [or] maneuver and it was becoming dangerous." (R. 55–56). Plaintiff stated she "would not have been able to keep up with [her] qualifications for defensive tactics of weapons handling because of … [her] hands … ankles and knees and so on and so forth, as well as the chronic pain." (R. 57). Plaintiff did this type of work for "about 13 years." Id.

Plaintiff next worked for the Portsmouth Naval Hospital in the medical records department. Id. Her duties included filing records, receiving and sending requests for physical/medical records, opening and lifting heavy boxes full of records, posting records in their necessary locations, and customer service work. Id. Plaintiff lifted and carried "20 to 25" pounds "at various intervals."

4

Id. Plaintiff stated that she left this job because of "more issues with [her] pain and [her] mental health." Id. She was unable "to use [her] hands well and [she] couldn't handle the stress and workload because [she] also started missing a lot of work" due to "flareups and medical appointments." (R. 57–58).

After considering Plaintiff's testimony, the ALJ called Vocational Expert (VE) Rich Bradley. (R. 75). The ALJ's hypothetical for the VE posited a person with the same age and work experience as Plaintiff who was capable of light work with the following limitations:

> [The individual] can frequently reach in all directions bilaterally; frequently finger bilaterally; can occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; frequently balance; occasionally stoop, kneel, crouch, but never crawl; occasionally be exposed to unprotected heights, moving mechanical parts, wetness, extreme cold, extreme heat, vibration and noise above office levels; and is also limited to simple, routine, repetitive tasks, as well as only occasional interaction with supervisors, coworkers and the public.

(R. 76). The VE identified jobs that would be available to such a person, including a clothing bagger (DOT 920.687-018) with 6,300 jobs in the national economy, and housekeeping cleaner (DOT 323.687-014) with 24,500 jobs in the national economy. (R. 76–77).

The ALJ then added additional limitations to the hypothetical, namely that the individual could only stand and walk four hours a day. (R. 77). The VE testified that this person could no longer perform the housekeeping position but could still work as a clothing bagger. (R. 77). The ALJ then asked if any jobs would be available to the person if they were further limited to only sedentary work and the other limitations listed above. (R. 77). The VE testified that this person could work as an addressing clerk (DOT 209.587-010) with 6,200 jobs in the national economy, and as an assembler (DOT 713.687-018) with 7,800 jobs in the national economy. Id.

The ALJ then asked if the hypothetical person could still perform "these four jobs"—clothing bagger, housekeeping cleaner, addressing clerk, and assembler—if he or she "could only

5

occasional[ly] handle and finger with the dominant arm." Id. The VE testified that this person could not perform any of the four jobs. (R. 78). The ALJ then immediately asked if "these jobs" would be "deemed simple, routine, repetitive but not production paced ... meaning no assembly line type work; there would be no hourly quotas and the work would be done at a consistent pace?" Id. The VE testified that they would. Id. After additional questioning from the ALJ, the VE explained the acceptable time-off task for all four jobs would be 10%, and the tolerance for absences would be one to two days per month. Id. Plaintiff's attorney then asked the ALJ:

> [I]f the hypothetical individual needed to occasionally use a cane for standing and ambulation, would that be tolerated in the jobs that you cited, either with hypothetical one or hypothetical three?

(R. 78). The VE testified that this limitation would "impact" the housekeeping cleaner position but would not impact the other three positions because they can be "performed while seated." (R. 78–79). Plaintiff's sole argument in this appeal is that the ALJ failed to meet the burden at step 5 because the record does not reflect the VE's opinion that the pace limitation adopted in Plaintiff's RFC would not affect the availability of the two light positions the VE identified. As set out below, I find the record clear and recommend the Court affirm the Commissioner's decision.

### III. Standard of Review

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence,

but the evidence may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017). Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. Analysis

Plaintiff's brief identifies two arguments supporting one error in the ALJ's decision. Both of Plaintiff's arguments concern the ALJ's step five finding and must be considered in tandem. Specifically, Plaintiff argues that the ALJ relied on deficient vocational expert testimony and improperly found that 6,300 clothing bagger positions is a significant number in the national economy. Pl.'s Br. (ECF No. 7, at 5–8). Although the ALJ also found that Plaintiff could work as a housekeeping cleaner, with 24,500 jobs nationally, Plaintiff urges the Court to find that the hearing testimony concerning this position is unclear, and thus it is possible that the VE meant to eliminate the housekeeping cleaner position in light of the pace restriction applied in a follow up hypothetical. Id. at 9–10. If the housekeeping cleaner job is eliminated, "only one light occupation" would remain at step five—clothing bagger—which Plaintiff contends does not exist

7

in significant numbers in the national economy. Id. at 10. After considering these arguments, and as explained below, the Court finds no error at step five of the ALJ's sequential analysis.

### A.     Framework for SSA Disability Evaluation

A person may file for and receive disability insurance benefits under the Social Security Act if he or she meets the insured status requirements of 42 U.S.C. § 423(c)(1), is under the retirement age as defined in § 416 of the Act, and is under a disability as defined in § 423(d). As relevant here, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1)(A); accord 20 C.F.R. § 404.1505(a). An impairment renders an individual disabled only if it is so severe as to prevent the person from engaging in his or her prior work or any other substantial gainful activity that exists in the national economy. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

SSA regulations set out a sequential analysis which ALJs use to make their determination. 20 C.F.R. § 404.1520 (a)(4). Specifically, the regulations direct the ALJ to answer the following five questions:

1.   Is the individual involved in substantial gainful activity?

2.   Does the individual suffer from a severe impairment or a combination of impairments that meets the durational requirement and significantly limits his or her physical or mental ability to do basic work activities?

3.   Does the individual suffer from an impairment(s) that meets or equals a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment") and meets the durational requirement?

4.   Does the individual's impairment or combination of impairments prevent him or her from performing any relevant past work?

> 5. Does the individual's impairment or combination of impairments prevent him or her from performing any other work?

An affirmative answer to question one, or a negative answer to questions two, four, or five, means the claimant is not disabled. An affirmative answer to questions three or five establishes disability. The claimant bears the burden of proof during the first four steps; if the analysis reaches step five, the burden shifts to the Commissioner to show that other work suitable to the claimant is available in the national economy. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The SSA considers all material evidence in evaluating whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(3); 404.1520b. This includes "(1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age." Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967)). Ultimate responsibility for making factual findings and weighing the evidence rests with the ALJ. Hays, 907 F.2d at 1456 (4th Cir. 1990) (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

## B. The ALJ Decision Currently Before the Court for Review

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date until the hearing date. (R. 23). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "major depressive disorder (MDD), generalized anxiety disorder (GAD), right knee osteoarthritis (OA), obesity, mild bilateral shoulder OA, mild bilateral carpal tunnel syndrome (CTS), cervical spine degenerative disc disease (DDD) at C4-C6, mild to moderate lumbar spine DDD and facet arthropathy, and status post (s/p) left ankle fracture." Id. At step three, the ALJ found that Plaintiff did not suffer from a

listed impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. 25). The ALJ then developed a finding regarding Plaintiff's RFC. (R. 27). She determined Plaintiff was able to perform light work with the following limitations:

> the claimant can bilaterally reach in all directions and frequently bilaterally finger. The claimant can occasionally climb ramps and stairs, stoop, kneel and crouch, but never climb ladders, ropes or scaffolds, or crawl. The claimant can frequently balance. The claimant can occasionally work at unprotected heights and around moving mechanical parts, around wetness, extreme cold, extreme heat, vibration, and noise above office level. The claimant can perform simple, routine, repetitive nonproduction pace tasks, and occasionally work around supervisors, coworkers, and the public.

Id. At step four, the ALJ concluded that Plaintiff could not perform any past relevant work. (R. 36). At step five, the ALJ found work in the national economy Plaintiff could perform and therefore found that she was not disabled. (R. 37).

### C. The ALJ Properly Performed Step 5 of the Sequential Analysis and Her Determination is Supported by Substantial Evidence

Plaintiff alleges that substantial evidence does not support the ALJ's step five finding because she relied on deficient vocational expert testimony. Pl.'s Mem. (ECF No. 7, at 5–10). At the hearing before the ALJ, the VE testified that an individual with Plaintiff's same age, work experience, and RFC could work at the light exertional level as a clothing bagger with 6,300 positions in the national economy, and as a housekeeping cleaner with 24,500 positions in the national economy. (R. 77). Plaintiff argues that 6,300 positions is "presumptively not a significant number in the national economy," and remand is necessary to give "the ALJ the opportunity to explain why jobs existing with such low numbers are a significant number." Pl.'s Mem. (ECF No. 7, at 7).

The ALJ's burden at step five is to identify at least one occupation that exists in significant numbers in the national economy that Plaintiff can perform. The Social Security Administration

has not adopted a bright line rule or numerical definition for "significant numbers in the national economy." See Mayo v. Astrue, No. 3:10cv866, 2012 U.S. Dist. LEXIS 33680, 2012 WL 859344, at *12 (E.D. Va. Feb. 24, 2012), report and recommendation adopted, No. 3:10cv866, 2012 U.S. Dist. LEXIS 33628, 2012 WL 859557 (E.D. Va. Mar. 13, 2012). Nonetheless, courts "have generally held that at least 10,000 positions in the national economy is a 'significant' number." Marco R. M. v. Kijakazi, No. 2:21cv38, 2022 U.S. Dist. LEXIS 15549, at *25 (E.D. Va. Jan. 10, 2022), report and recommendation adopted, 2022 U.S. Dist. LEXIS 14688 (E.D. Va. Jan. 25, 2022) (internal citation omitted).

During the hearing before the ALJ, the VE identified two groups of positions an individual with Plaintiff's same age, education, and work experience could perform depending on whether the person was limited to light or sedentary work. (R. 77–78). The VE testified that if the hypothetical person was limited to light work, with the additional limitations previously described,[3] this individual could work as a clothing bagger and housekeeping cleaner. (R. 76–77). The VE also identified two positions that the individual could perform if he or she was limited to sedentary work—addressing clerk with 6,200 jobs in the national economy, and assembler with 7,800 jobs in the national economy. (R. 77).

The ALJ then asked the VE if the hypothetical individual could perform *these four jobs* with the following additional limitations:

> Q: And if the hypothetical individual could only occasional[ly] handle and finger with the dominant arm, would any of these four jobs remain?
>
> A: No, your honor.
>
> Q: And would these jobs be deemed simple, routine, repetitive but not production paced, right, meaning no assembly line type work; there would be no hourly quotas and the work would be done at a consistent pace?

---

[3] See infra at 5–6.

11

      A: Yes, your Honor.

(R. 77–78) (emphasis added). Plaintiff insists that this testimony is unclear, and it would be "conjecture" to find that the ALJ intended the non-production pace hypothetical to apply both to the sedentary the light hypothetical RFC. Pl.'s Br. (ECF No. 7, at 9). Plaintiff is plainly incorrect, and is trying to blur the clear hearing testimony.

      During his hearing testimony, the VE only identified four jobs: clothing bagger, housekeeping cleaner, clerk, and assembler. (R. 76–77). Thus, when the ALJ asked the VE about "these four jobs," and then immediately asked whether "these jobs would be deemed" non-production pace, there is no question that the ALJ is referencing the four jobs described by the VE. See (R. 77–78). Further, there is no indication that the VE misunderstood the ALJ, and Plaintiff has not directed the Court to any alleged inconsistencies in the VE's testimony nor has Plaintiff cited to any law or DOT guidance suggesting that this position could not be performed with the pace restriction prescribed by the RFC. As such, the record demonstrates that the VE testified that the non-production pace would not affect the number of available jobs in the housekeeping position.

      Since the housekeeping cleaner job remains at step five of the ALJ's sequential analysis, Plaintiff's argument concerning positions available as a clothing bagger is irrelevant. The Court does not need to determine whether the clothing bagger position exists in significant numbers in the national economy because the VE also determined that Plaintiff could work as a housekeeping cleaner. Put another way, even accepting that the clothing bagger job does not exist in significant numbers in the national economy, a significant number of jobs remain for Plaintiff because substantial evidence supports the ALJ's finding that she can work as a housekeeping cleaner, with 24,500 positions in the national economy. Plaintiff does not dispute that the housekeeping cleaner

position exists in significant numbers in the national economy. In fact, Plaintiff admits that she needed to eliminate this position at step five to ultimately receive a DIB award:

> This is, without exaggeration, the difference between [Plaintiff] winning or losing her case. This is because if the housekeeping cleaner occupation is eliminated, then only one light occupation remains in existence at Step Five, the clothing bagger, which only exists with 6,300 jobs nationally, which is not a significant number. That results in only the sedentary occupations remaining in significant numbers, but at the sedentary level of exertion [Plaintiff] becomes axiomatically disabled by direct application of <u>Grid Rule 201.14</u> as of her 50th birthday of January 24, 2021.

Pl.'s Mem. (ECF No. 7, at 10). Here, the ALJ satisfied her burden at step five by identifying at least one occupation that exists in significant numbers in the national economy that Plaintiff can perform within the limits of her limited light RFC. Accordingly, this Report finds that the Agency's determination that Plaintiff could perform other work in the national economy was supported by substantial evidence.

## V. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the court DENY Plaintiff's Motion for Summary Judgment, (ECF No. 6), and AFFIRM the final decision of the Commissioner.

## VI. Review Procedure

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, <u>see</u> 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A

party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/ Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia
January 5, 2023

14